# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JACINTA F. RAIMUNDO, | ) | 1:09-cv-02219 GSA |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **BACKGROUND**

Plaintiff Jacinta F. Raimundo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 & 10.

1

## **FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for supplemental security income benefits on December 7, 2006, alleging disability beginning in July 2000.  AR 99-102.  Her application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 64-67, 70-79.  ALJ Christopher Larsen held a hearing on January 28, 2009, and issued an order regarding benefits on May 27, 2009, finding Plaintiff was not disabled.  AR 9-44.  Thereafter, on October 23, 2009, the Appeals Council denied review.  AR 1-3.

**Hearing Testimony**

On January 28, 2009, ALJ Larsen held a hearing in Fresno, California.  Plaintiff appeared and testified with the assistance of an interpreter.  She was represented by attorney Melissa Proudian.  Vocational Expert ("VE") Thomas Dachelet also appeared and testified.  AR 18-44.

Plaintiff was born on February 12, 1964, and thus was forty-four years old on the date of the hearing.  She is five feet,[3] six inches tall and currently weighs 192 pounds.  AR 22.  She is not married.  Plaintiff has three children, ages twenty-one, eighteen and sixteen.  The oldest and youngest children currently reside with her in a friends' home.  AR 23.  Besides she and her two children, five others live in the Hanford, California, home.  AR 23-24.

Although Plaintiff has a valid California driver's license, she no longer drives "because of [her] arm."  She last drove on November 18, 2008.  AR 24.  When asked what was the highest grade level she completed in school, Plaintiff initially responded that it was the fourth grade in Portugal.  AR 24.  She did not earn a GED in the United States, but stated she received "a diploma from the islands."  AR 24.  She has never received any vocational training.  AR 25.

Plaintiff understands and speaks "a little bit" of English.  When asked whether she could read or write in English, she replied "[n]ot too good."  AR 25.  She cannot read the newspaper,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The Court notes that the medical record review revealed several references to the fact that Plaintiff had four children, rather than three children.  *See* AR 241, 425, 429, 631.

but may be able to follow simple directions on a note, if for instance she were lost. She could write a simple note, however, it would be written in Portuguese rather than English. AR 25.

Approximately nine years prior to the hearing, Plaintiff worked as an in home care provider for an older person. AR 25. She tried to work in 2006 for about two months but could not do so. AR 25-26.[4] Other than in home care services, in the past twenty years or so, Plaintiff has only worked cleaning homes for cash. AR 26-27.

Plaintiff does not believe she is capable of working eight hours a day, five days a week because everything she does causes her pain. She has pain in the neck, back and right arm, and gets headaches. AR 27. She also suffers from depression and anxiety. AR 27.

With regard to the back pain specifically, Plaintiff indicated that she was injured on July 17, 2000, when she was assisting a client in the shower. The client was holding onto Plaintiff's right arm for support, when the woman pulled Plaintiff forward, causing "something" to happen in her back, resulting in immediate pain. AR 28. Plaintiff sought treatment at a hospital and has a pending workers' compensation case as a result of the injury. AR 28. She continues to suffer low back pain and takes pain medication. On a scale of one to ten, Plaintiff indicated that generally when she is at home the pain is a six or seven. She has gone to the emergency room for treatment and "a shot" when the pain is a ten. AR 28-29. The week previous to the hearing, Plaintiff indicated that she sought treatment at the hospital and received Toradol or morphine. AR 29.

Due to the back pain, Plaintiff's ability to function is significantly affected. She indicated she has difficulty concentrating, and can only do so for a period of about twenty minutes before "crying because of the pain." AR 29. Plaintiff indicated she would have to take a break for two hours before resuming concentration for another twenty-minute period. AR 30. Plaintiff estimated she could sit in a chair for no more than twenty minutes before having to stand up. She could stand for ten to fifteen minutes before needing to sit down. Additionally, Plaintiff could

---

[4]Later, the ALJ indicated that records from 2006 indicate Plaintiff earned a total of $6,400. Because Plaintiff had testified she worked for about two months, the ALJ commented that sum was "an awful lot of money to make in two months." AR 41-42. Plaintiff replied that she did not remember how many months it was, but she "thought it was just two months." AR 42.

walk for "not even . . . a half a mile." AR 30. Plaintiff indicated that one of her physicians recommended back surgery, however, it was not authorized. AR 32. She indicated that the back pain travels into her legs as well, on the right side more so than the left. AR 32-33.

When she was asked to identify the heaviest weight she is capable of lifting, Plaintiff indicated she could lift not more than a gallon of milk with her right arm. She cannot lift any weight with her left arm. AR 30. Plaintiff can walk up a flight of stairs with the assistance of the railing, but it would cause pain. She cannot walk on uneven ground. AR 33.

With specific regard to Plaintiff's right arm, she cannot reach overhead or out in front of her due to pain. She cannot pick items up off the floor or ground, and her children will pick things up for her if necessary. AR 30-31.

Surgery was performed on Plaintiff's left arm after she fell at home. Prior to that fall, her left arm did not bother her much. AR 34-35.

The pain Plaintiff feels in her neck also travels along the right side down to her arm. She suffers from "lots of headaches." AR 33; *see also* AR 35. She gets headaches every day that "last a long time" and despite the medication she takes the pain does not resolve completely. AR 35. This pain causes Plaintiff to become "more nervous" and affects her concentration. AR 33. She can slowly move her head front to back and side to side. AR 33-34. When she was asked how long she could hold her head in one position, as if to look at a computer screen, Plaintiff indicated she could not do so for "even 10 minutes." Thereafter, she would need to lie down for "an hour in bed rest." AR 34.

Plaintiff's pain medication does not completely remove her pain. Moreover, the medication makes her drowsy and she will have to lie down "[m]ore than three times" during the course of a day, for an hour or two at a time. AR 31-32. Additionally, Plaintiff has treated her pain with physical therapy and uses a TENS unit. The unit "helps a little bit, not much . . . ." Hypodermal pain injections also did not negate her pain completely. AR 32.

With regard to depression, Plaintiff gets very nervous and feels worthless and sad. AR 35-36. She cries "a lot every day" and is never happy. AR 36. She cannot comfort herself and is "always very nervous." AR 36. She does not visit friends at their homes because their lives are

happy and hers "is very sad." AR 36. When asked whether she has suicidal thoughts, Plaintiff indicated that she "thought about that lots of times," but was not currently suicidal. AR 36. She last contemplated suicide about seven months ago. AR 36. She has been taking prescription medications to treat these conditions for about a year and a half. AR 36.

Other people make her nervous and thus Plaintiff prefers to be alone. AR 37. She is nervous all day and the nervousness and depression have worsened since she stopped working. AR 37. Plaintiff occasionally goes to church but "they look at" her when she has to stand up during the service. AR 38-39. She does not belong to any social groups. AR 39.

Plaintiff does not cook any longer, and last made soup about three months prior to the hearing. AR 37-38. A "girl" does the cooking because her arm pain prevents Plaintiff from doing so. The girl also does the grocery shopping and laundry. Plaintiff cannot vacuum or sweep. AR 38. She can no longer take a shower like she used to. AR 39.

VE Dachelet opined that Plaintiff could not perform her past relevant work considered to be medium, specific vocational preparation ("SVP") of 3, semi-skilled. AR 40.

VE Dachelet was asked to consider several hypothetical questions posed by the ALJ. First, the VE was asked to assume a hypothetical worker of Plaintiff's age, education, and work experience who can perform light physical exertion as defined by the regulations, limited to simple repetitive tasks. AR 41. The VE indicated that such a worker could not perform Plaintiff's past work, but would be capable of the full world of sedentary and light unskilled work. AR 41.

In a second hypothetical, the VE was asked to consider the same worker, however, in this instance the worker must have, in addition to the customary two breaks and meal period in a work day, additional break periods totaling one or more hours per day. AR 41. The VE indicated there were no jobs for such an individual. AR 41.

**Medical Record**

The entire medical record was reviewed by the Court (AR 166-654), however, only those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

**ALJ's Findings**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 20, 2006, and had the severe impairments of cervical and lumbar degenerative disc disease, major depressive disorder, posttraumatic stress disorder, generalized anxiety disorder, and opioid dependence. AR 11. Nonetheless, the ALJ determined that none of the severe impairments met or exceeded one of the listing impairments. AR 12.

Based on his review of the medical evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary or light unskilled level work. AR 12-16. The ALJ found that Plaintiff could not perform her past relevant work. AR 16. He determined that Plaintiff is a younger individual, with a high school education obtained in Portugal, whom is unable to communicate in English. AR 16. Based on her age, vocational background and RFC, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy. Thus, the ALJ determined she was not disabled. AR 16-17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the date of her application; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform her past relevant work; yet (5) in light of her age, education and background, the ALJ determined that Plaintiff had the RFC to perform jobs that exist in significant numbers in the national economy. AR 9-17.

On appeal, Plaintiff argues that the ALJ improperly considered the relevant medical opinions. (Doc. 12 at 6-12.)

### DISCUSSION

*Evaluation of the Medical Opinions*

Plaintiff argues that ALJ Larsen erred by ignoring pertinent portions of the medical record "without articulating rationale for doing so." (Doc. 12 at 7.) More particularly, Plaintiff

contends the ALJ erred in his consideration of the opinions of physicians Rowell, Terrell and Portnoff. Relatedly, Plaintiff asserts the ALJ erred in relying upon the non-examining physician's opinion. (Doc. 12 at 7-12.) Defendant asserts the ALJ properly assessed the medical opinions, and that "there are no medical opinions inconsistent with the ALJ's finding." (Doc. 13 at 5.)

Cases in the Ninth Circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a

nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

The relevant medical evidence and physicians' opinions are summarized below.

### Howard B. Terrell, Ph.D.

Board certified psychiatrist Howard B. Terrell evaluated Plaintiff on April 14, 2006, and provided a report dated May 10, 2006, related to the workers' compensation proceedings.  AR 416-434.

Plaintiff reported to Dr. Terrell that she feels sad, down and depressed.  She cries a lot and does not experience pleasure or enjoyment in life.  She fatigues easily and has little energy, and her weight fluctuates.  She suffers from insomnia and decreased feelings of self worth.  AR 427.  Plaintiff denied any suicidal or homicidal ideation or intent, and also denied hallucinations or delusions.  AR 428.  When asked about anxiety, Plaintiff reported anxiousness, worrying, nervousness, shakiness, chills and muscle tension.  AR 428.

The doctor's mental status examination findings report Plaintiff was alert and properly oriented to person, place and time, and she maintained good eye contact.  AR 430.  Plaintiff's IQ appeared to be within the low average range.  AR 430.

Thought content and processes were normal, memory and recall were good and/or excellent, abstract thinking and simple math were fair, and judgment and insight were reportedly "fair to good."  AR 430.  Plaintiff's mood "ranged from euthymic to moderately depressed."  AR 430.

Dr. Terrell's diagnostic impression includes major depressive disorder and generalized anxiety disorder. The doctor recorded a GAF[5] score of 60. AR 431. Dr. Terrell believed Plaintiff was "temporarily totally disabled on a psychiatric basis" and believed the disability began shortly after the physical injuries sustained in the course of her employment as an in home care provider. AR 432. Dr. Terrell recommended she receive further psychiatric care. AR 432-433.

On August 21, 2008, Dr. Terrell performed a repeat evaluation of Plaintiff for purposes of the workers' compensation matter. AR 620-640.

When Dr. Terrell asked Plaintiff how her symptoms in 2008 compare to her symptoms in 2006, Plaintiff reported feeling "moderately better" in the following areas: feeling sad, down, depressed and crying; greatly decreased feelings of self worth; and psychomotor retardation. Plaintiff reported she felt "about the same" regarding decreased energy levels and "easy fatigue." She assigned "slightly better" to a decreased pleasure and enjoyment in life. Finally, Plaintiff reported her depression was "much worse" regarding weight changes and insomnia. AR 632.

Plaintiff denied suicidal or homicidal ideation or intent, yet indicated she had been experiencing auditory hallucinations two or three times per week for the last two years or so. She hears a man's voice calling for her. AR 632-633. Plaintiff's anxiety disorder symptoms were "moderately better" in 2008 than they were in 2006. AR 633. A significantly decreased income was identified as a major stressor in her life. AR 633.

The doctor's mental status examination findings report Plaintiff was alert and properly oriented to person, place and time, and she maintained good eye contact. AR 634. Plaintiff's IQ was again reported to be within the low average range. AR 634. Reality contact and recall were good, long and short term memory were fair to good. AR 634. Simple math capabilities were

---

[5] The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV"). A GAF between 51 and 60 indicates "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). DSM-IV at 34. A GAF between 41 and 50 indicates that the individual has "[s]erious symptoms … OR any serious impairment in social, occupational, or school functioning …." DSM-IV at 32.

fair, and her judgment and insight were fair to good. AR 635. Plaintiff's affect was normal to constricted and otherwise consistent with her euthymic to moderately depressed mood. AR 635.

Plaintiff described her typical day for Dr. Terrell. She wakes up around 6:00 or 6:30 in the morning, then "goes for a walk around the dairy . . . for about an hour." AR 635. Thereafter, she will make and have her coffee, and prepare a breakfast that will typically consist of eggs, bacon and hash browns. She takes her shower and does light housework. For example, she may wash dishes. Then Plaintiff will lie down on the sofa and watch TV. She may also go shopping or attend medical appointments. She will have lunch at the house, then she may help others prepare dinner about 5:30 p.m. AR 635. In the evening, she may take another walk around the dairy before watching TV. She goes to bed about 9:20 p.m., but will often stay up late watching TV due to insomnia. AR 636.

The doctor's diagnostic impression on this occasion included major depressive disorder, recurrent, severe with psychotic features, generalized anxiety disorder and posttraumatic stress disorder. AR 636. Dr. Terrell assigned a GAF score of 45. AR 637. The doctor opined Plaintiff had "suffered a relapse of her prior" depression and he believed she remained temporarily totally disabled on a psychiatric basis. AR 638.

### Lance A. Portnoff, Ph.D.

On February 10, 2007, board certified neuropsychologist Dr. Portnoff completed a psychological evaluation of Plaintiff at the request of the Commissioner. AR 170-173.

Plaintiff reported she felt suicidal two years ago and was hospitalized for one week. She was depressed and anxious as the result of her medical problems. She hears voices calling her name. AR 171.

Dr. Portnoff notes mild psychomotor slowing, fair eye contact and quiet speech. Thought process was coherent and organized and her affect was "characterized by moderate, tearful dysphoria." She was alert and cooperative and was "probably making her best effort." AR 171.

Objective testing revealed an IQ of 75, or borderline intellectual functioning. A full scale IQ measurement falls within 67 and 83. Attention was impaired and immediate recall was intact; however, delayed recall was impaired. AR 171.

11

1   Dr. Portnoff's clinical impression included major depressive disorder, single episode,
2   moderate with anxious and psychotic features. He assigned a GAF of 55. AR 172.
3   The doctor noted Plaintiff suffered mild restrictions in daily activities. He noted she does
4   not need assistance or supervision for basic activities of daily living. She was mild to moderately
5   limited in maintaining social functioning, and was similarly limited in concentration, persistence
6   and pace. AR 172-173. Dr. Portnoff opined Plaintiff could understand, carry out and remember
7   simple instructions, and was probably capable of handling her own funds. She was moderately
8   limited in her ability respond appropriately to coworkers, supervisors and the public, and was
9   mildly limited in her ability to deal with unexpected changes in a routine work setting. She was
10  not limited in her ability to respond appropriately to usual or routine work situations. AR 173.

**George P. Rowell, M.D.**

Psychiatrist George P. Rowell conducted a comprehensive psychiatric evaluation with psychological testing, generating a report dated February 14, 2007.[6]

With regard to the doctor's mental status examination, Plaintiff was business-like and socially appropriate, with direct eye contact. AR 242. Her overall mood was depressed and her affect was non-specific. She was oriented to person, place, time and purpose. Recent and immediate recall were intact, as were remote and delayed recall. AR 243. With regard to Plaintiff's thought content, the doctor noted "[d]elusions were present as, persecutory/paranoid. AR 243.

Dr. Rowell noted there was no evidence-based behavior to indicate a disturbance of memory or concentration, nor were there disturbances in coordination of language and motor function. AR 244. Plaintiff's intellectual function was average, as was her vocabulary. AR 244. She was able to complete simple addition, subtraction, multiplication and division problems. AR 244. With regard to insight and judgment, her general fund of knowledge was average and her insight was intact. AR 244. Plaintiff denied suicidal ideation at that time, but admitted a "recent

---

[6]The record also reflects that Plaintiff saw Dr. Rowell on at least eight separate occasions.

fleeting" suicidal thought. She denied violent or homicidal thoughts, and showed no signs of such behavior. AR 245.

Psychological testing included the Beck Anxiety Self Rating Scale, Beck Depression Inventory, Index of Somatic Problems, Incomplete Sentence Blanks and MMPI-2. AR 246. The Beck Anxiety Self Rating Scale score was a 47 and "spoke of a severe level of anxiety." AR 246. The Beck Depression Inventory score was 43 and "spoke of an extreme level of depression." AR 247.

An interpretation of the Minnesota Multiphasic Personality Inventory-2 indicated that it was likely that Plaintiff exaggerated her disturbance in the areas of attention and comprehension. AR 249. Further, with regard to attitude and approach, the profile was deemed invalid. AR 249. In the area of socio-cultural versus conscious distortion, it was noted Plaintiff's score indicated "intentional exaggeration," and it was suggested the motivation to malinger be evaluated. AR 249-250.

Dr. Rowell's diagnoses included the following: pain disorder associated with both psychological factors and general medical condition; posttraumatic stress disorder, chronic type; major depressive episode, moderate to severe, without psychosis; rule out opioid dependence. AR 253. The doctor assigned GAF scores of 55 as to Plaintiff's major depression and posttraumatic stress disorder. AR 254. Dr. Rowell opined that Plaintiff was markedly impaired regarding activities of daily living, social functioning, concentration, and adaptation. AR 257. He recommended continued psychiatric treatment. AR 265. Further, the doctor believed Plaintiff was "disabled totally and temporarily psychiatrically." AR 265.

**Mental Residual Functional Capacity Assessment  
& Psychiatric Review Technique**

On March 16, 2007, Archimedes R. Garcia, M.D., prepared a Mental Residual Functional Capacity Assessment wherein he found Plaintiff was not significantly limited with regard to her ability to remember locations and work-like procedures, and to understand and remember very short and simple instructions. She was moderately limited with regard to the ability understand and remember detailed instructions. AR 197. Dr. Garcia found that Plaintiff was not

significantly limited regarding sustained concentration and persistence in all but one area; with regard to the ability to carry out detailed instructions, he found Plaintiff moderately limited. AR 197-198. Dr. Garcia found no significant limitation with regard to both social interaction and adaptation. AR 198. The doctor opined Plaintiff was able to perform simple repetitive tasks on a sustained basis, and that she could adapt to work changes and relate to others. AR 199.

In the Psychiatric Review Technique also completed March 16, 2007, Dr. Garcia found Plaintiff's depressive disorder to be a medically determinable impairment that did not satisfy the Listing 12.04 criteria. AR 202-203. With regard to anxiety, the doctor found insufficient evidence to substantiate the presence of an anxiety disorder and Listing 12.06. AR 203-204. With regard to "B" criteria of the Listings, Dr. Garcia determined that Plaintiff was mildly limited in the restriction of activities of daily living, difficulties maintaining social functioning, and difficulties in maintaining concentration, persistence and pace. He noted there was insufficient evidence of repeated episodes of decompensation. AR 208.

### ALJ's Related Findings

ALJ Larsen noted the following regarding the relevant opinions:

> [Plaintiff] suffers from depressive disorder, anxiety disorder, and posttraumatic stress disorder, as clinically corroborated by evaluations performed in February, 2007, and September, 2008, a good deal of which appears to be non-industrial in origin. In this regard, Dr. Rowell notes [she] was injured during the course of her employment as a caregiver. In terms of psychiatric sequelae, she stated "you cannot imagine that in seven years, I went through everything. My stress was due to this job. I have stress now because I cannot work, and I cannot earn (sic)." [Plaintiff] also reported she developed psychiatric symptoms secondary to sexual abuse in childhood, and her son's status as a sex offender, which means the workers' compensation doctors may not be giving her psychiatric symptoms much attention. It is possible that [her] subjective symptoms of pain - and she has undergone considerable pain treatment, including physical therapy, epidural injections, using a TENS unit, and narcotic pain medications to the point of dependence - may increase her perception of pain from her physical impairments. In fact, treating psychiatrist Dr. Rowell diagnoses "pain disorder associated with both psychological factors and a general medical condition."
> 
> In this case, while [she] does have residual deficits secondary to an industrial injury, she is not precluded from all substantial work. While she alleged she was almost totally afunctional at the hearing, these complaints and restrictions were uncorroborated by the medical treatment to date. Certainly, if she restricts herself to light level of exertion with nonexertional limitations as discussed above, then her overall symptomatology appears controllable and within tolerable limits. There is no reliable evidence in this record which tends to rebut my conclusion. I note [Plaintiff] engaged in a wide range of activities of daily

> living not fully consistent with her disability allegation. For example, she does simple meal preparation daily, cleans, does laundry, uses public transportation, rides in a car, shops in stores, handles money, watches TV, reads, spends time with others, and, when required, attends Court for her son. Although [she] indicated she uses a cane, crutch or wheelchair, I note the absence of a medical condition which would reasonably be expected to produce the actual pain in amount and degree alleged . . .. Furthermore, I question the level of severity of alleged impairments in view of [her] work activity during 2006. Accordingly, for all of the above and foregoing, I find [Plaintiff] less than fully credible under SSR 96-7p, and give her allegations little weight.
> As for the opinion evidence, the state-agency consultants opined [Plaintiff] had no severe physical impairment and that a Medical Source Statement of sedentary was not supported by the objective medical findings. I agree with the latter statement, but disagree with the former statement, since the preponderance of the credible medical evidence establishes [Plaintiff] does in fact have a severe medically-determinable physical impairment. The state-agency doctors also concluded [she] has the mental capacity for simple repetitive tasks. I give this opinion significant weight, as it is consistent with the record when viewed in its entirety.

AR 15-16, internal citations omitted.

Here, while the ALJ made references to the "evaluations performed in February 2007, and September, 2008," the Court is not convinced ALJ Larsen has provided clear and convincing or specific and legitimate reasons for relying on the state agency physician's opinion.

As the ALJ recognized, Dr. Rowell is Plaintiff's treating psychiatrist. *See* AR 15. Thus, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. Dr. Rowell found Plaintiff markedly impaired in the areas of daily living, social functioning, concentration and adaptation. AR 257. However, the ALJ's references to "Exhibit 9F" - which is Dr. Rowell's report - do not reference the doctor's specific marked impairment findings. In fact, the ALJ's references to Exhibit 9F do not involve a reference to page forty-seven (47) of that exhibit, or AR 257, wherein Dr. Rowell identified four areas of marked limitation.

Additionally, while Dr. Portnoff's opinion is not referenced in the ALJ's findings, this examining physician found Plaintiff to be mildly impaired in the activities of daily living, yet mild to moderately limited in maintaining social functioning, and maintaining concentration, persistence and pace. AR 172-173. Thus, to the degree Dr. Portnoff's opinion contradicts the opinion of Dr. Rowell, and arguably that of Dr. Terrell, the ALJ did not provide specific and legitimate reasons for assigning those opinions less weight in light of Dr. Portnoff's opinion.

15

Dr. Terrell, an examining physician on two separate occasions, opined that Plaintiff was "totally disabled on a psychiatric basis." In fact, in the last report of September 6, 2008, Dr. Terrell noted that Plaintiff was experiencing "episodes of auditory hallucinations that continue to occur about two to three times per week" and that Plaintiff was "likely to need psychiatric treatment on an indefinite basis." AR 639. While, perhaps, as Defendant suggests (*see* Doc. 13 at 5), these doctors "did not . . assess any specific limitations resulting from Plaintiff's mental impairments," the record reveals discrepancies that were not adequately addressed or explained in the ALJ's findings.

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."'" *Orn,* 495 F.3d at 632; *Murray v. Heckler*, 722 F.2d 499, 501-502 (9th Cir. 1983). "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985)), or (2) findings based on objective medical tests that the treating physician has not considered (*see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

If a treating physician's opinion is not given controlling weight because it is not well supported, or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Code of Federal Regulations Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2) through (6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii).

Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

Here, ALJ Larsen does not appear to have considered the length of the treatment relationship and the frequency of examination by Plaintiff's treating psychiatrist, Dr. Rowell. While the ALJ does make a reference to the consistency with the record as a whole, the reference is conclusory. In light of the aforementioned discussion, the Court is not convinced the opinion of Dr. Rowell was properly evaluated.

The Court also notes that the ALJ himself opined that Plaintiff's "subjective symptoms of pain . . . *may* increase her perception of pain." AR 15, emphasis added. Dr. Rowell, as ALJ Larsen recognized, diagnosed a "pain disorder" with psychological factors. It appears this area may require further development of the record. On remand, the Commissioner may be well served to obtain a new psychiatric examination for further consideration. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

In sum, ALJ Larsen did not give specific and legitimate reasons for rejecting the treating and examining opinions in this matter, in favor of the non examining physician. Thus, his findings are not supported by sufficient evidence and are not free of legal error. Accordingly, this matter will be remanded for the ALJ's further consideration of specific medical opinions.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter

judgment in favor of Plaintiff Jacinta F. Raimundo and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **March 3, 2011**                              /s/ **Gary S. Austin**
                                                       UNITED STATES MAGISTRATE JUDGE